DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

YOOSUN KOH (NYBN 5245220)
Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7034
     FAX: (415) 436-7234
     Yoosun.Koh@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 21 CR 0010 JD |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| CHRISTIAN GUARDADO, | Date: January 11, 2021 |
| Defendant. | Time: 10:30 a.m. |
| | Judge: Hon. Alex G. Tse |

i

# <u>CONTENTS</u>

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ....................................................................................2

        A.      Guardado Filmed a 15-Year-Old Boy Performing a Sex Act on Him and Sent
                the Video to Another Person .......................................................................2

        B.      Guardado Produced Additional Pornographic Videos of the 15-Year-Old
                Victim and Distributed Them Online .........................................................7

        C.      Guardado Filmed A Sexually Explicit Video With Another Suspected Minor
                Victim and Distributed It For Payment .......................................................8

        D.      Guardado Targeted Suspected Minor Victims Online and Enticed Them to
                Meet in Person to Film Videos of Them Having Sex ....................................10

III.    ARGUMENT ........................................................................................................11

        A.      Legal Standard for Pretrial Detention ......................................................11

        B.      The Section 3142(g) Factors Weigh in Favor of Detention .........................12

        C.      The Risk that Guardado May Contract COVID-19 at Santa Rita Jail Does Not
                Warrant Pretrial Release. ..........................................................................19

IV.     CONCLUSION .....................................................................................................21

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1

## **TABLE OF AUTHORITIES**

2

3

### **CASES**

4   Paroline v. United States, 572 U.S. 434 (2014)                                           14

5   *United States v. Diaz-Hernandez*, 943 F.3d 1196 (9th Cir. 2019)                         11, 19

6   *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991)                                  14

7   *United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008)                                    12, 14

8   *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985)                               11

9   *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986)                                  12

10  *United States v. Bell*, No. SACR 08-00087-MMM, 2008 WL 11411709
       (C.D. Cal. June 6, 2008)                                                             14

11

12  *United States v. Castaneda*, No. 18-CR-00047-BLF-1, 2018 WL 888744
       (N.D. Cal. Feb. 14, 2018)                                                            12

13  *United States v. Marigny*, No. 20-MJ-70755-MAG-1, 2020 WL 4260622
       (N.D. Cal. July 24, 2020)                                                            19

14
    *United States v. Thomas*, 667 F. Supp. 727 (D. Or. 1987)                               12

15

16

17                                        **STATUTES**

    18 U.S.C. § 2251(a)                                                                      14

18  18 U.S.C. § 2252(a)(2)                                                                   1, 12, 19

19  18 U.S.C. § 2422(b)                                                                      14

20  18 U.S.C. § 3142(e)(1)                                                                   11

21  18 U.S.C. § 3142(e)(3)(E)                                                                12

22  18 U.S.C. § 3142(f)(2)(B)                                                                11

23  18 U.S.C. § 3142(g)                                                                      12

24

25

26

27

28

## I.      INTRODUCTION

The COVID-19 pandemic has caused an exponential rise in the online exploitation of children, especially the enticement of children to produce sexually explicit content.[1] And predators like Christian Guardado are to blame.  Guardado, a 24-year-old male, has a penchant for exploiting underage boys through hands-on sexual abuse and over the Internet.  Guardado sexually abused a 15-year-old boy during the fall of 2018 and filmed multiple videos of the victim engaged in sex acts with Guardado or with another male.  On February 21, 2019, Guardado texted one of these pornographic videos to another suspected child predator along with the text message, "This is some other 15 year old."   His abuse of this child continued: Guardado further distributed videos of this minor victim to no fewer than seven (7) different people online via a social media application called Snapchat.  In fact, on June 2, 2020 – the day before law enforcement officers executed a federal search warrant at his residence and seized his electronic devices – Guardado sent a video of this same victim being anally sodomized to another Snapchat user.

Law enforcement has learned from a *Mirandized* interview of Guardado on June 3, 2020 and other investigative processes that Guardado filmed pornographic videos with other suspected underage male victims, shared those videos with others and, on at least one occasion, received payment for a video involving a suspected minor victim.  Guardado's cell phone and Snapchat account contained numerous child pornography images and videos, some of them filmed by Guardado himself, and depicting suspected minor victims engaged in sexually explicit conduct with Guardado.  Guardado targeted suspected minor victims online on social media applications such as Snapchat, enticing and manipulating them to send him sexually explicit images and videos, and even suggesting that they meet in person to film videos of them having sex.

On January 7, 2021, a Grand Jury returned a one-count indictment charging Guardado with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  Gurardado's charged conduct — which carries a presumption of detention — combined with his possession and production of

---

[1] *See, e.g.*, https://www.scientificamerican.com/article/the-coronavirus-pandemic-puts-children-at-risk-of-online-sexual-exploitation/ (last accessed January 10, 2021); https://www.cnn.com/2020/05/25/us/child-abuse-online-coronavirus-pandemic-parents-investigations-trnd/index.html (last accessed January 10, 2021).

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

additional child pornography images and videos, proves by clear and convincing evidence that he poses a danger to the community.  Furthermore, Guardado poses a severe flight risk.  Guardado's recent travel history and future travel plans demonstrate his predatory nature and the premeditation and planning that go into his efforts to have sex with minors.  For example, Guardado admitted to law enforcement that he chose to study in Spain in 2019, at least in part, because Spain has a lower age of consent than the United States.  Law enforcement is also aware that he plans to travel to Thailand for a study-abroad program later this month.  Given Guardado's predilection for engaging in sexual conduct with minors, it is highly concerning that Guardado intends to travel to a country that is known for child sex trafficking and sex tourism.

Accordingly, and for the reasons set forth below, this Court should order Guardado detained pending trial because he poses a severe danger to children and risk of flight that no combination of release conditions can sufficiently mitigate.

## II.   FACTUAL BACKGROUND

### A.   Guardado Filmed a 15-Year-Old Boy Performing a Sex Act on Him and Sent the Video to Another Person

On or about February 21, 2019, Guardado sent a video depicting child pornography to an associate via text message.  The video ("**IMG_0991.MOV**") shows a minor victim ("Minor Victim 1") lying on the bathroom floor.  A post-pubescent male is straddling the minor male and both penises are visible at some points in the video.  The minor male manually masturbates the post-pubescent male who ejaculates on the minor male's chest.  Minor Victim 1's face is visible in the video, but the post-pubescent male's face is not.  The video appears to have been filmed from the vantage point of the post-pubescent male.  Law enforcement has identified the victim, interviewed him, and confirmed that he was 15 years old at the time he engaged in sexually explicit conduct with the defendant in the video.  Guardado also admitted that he is the post-pubescent male shown in the video.

Homeland Security Investigations ("HSI") first became aware of the video when they executed a federal search warrant at the residence of another target ("Individual 1") for crimes related to the sexual exploitation of children.  Law enforcement seized Individual 1's cell phone, among other items, and found a text message conversation dated January 17, 2019 to February 21, 2019 between Individual 1

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

and a person known as "Cristiani" at cell phone number XXX-XXX-8099.  On February 21, 2019,
Individual 1 and Cristiani exchanged, in part, the following text messages:

Cristiani:     It's a hot thread

Individual 1:  [video of what appears to be Individual 1 anally sodomizing another
individual – file: **IMG_1190.MOV**]

Individual 1:  [video of what appears to be Individual 1 masturbating – file:
**IMG_1181.MP4**]

Individual 1:  [image file of what appears to be Individual 1 holding his penis – file:
**IMG_1183.JPG**]

Individual 1:  The snapchat one is.  Especially the younger twinks u meet

Cristiani:     I have this other 15 year old I see but he makes me pay 300
everytime we hang

Individual 1:  Whats he look like?

Individual 1:  If u have pics :p

Cristiani:     [image of male's face, approximately 14-17 years of age, while
lying down – file: **IMG_1535.JPEG**]

Cristiani:     Sorry I was eating dinner

Individual 1:  Very cute. X stuff?

Cristiani:     He wants cash if I send his xxx pics

Cristiani:     He's a smart lil 15 year old

Individual 1:  How would he know if u sent them

Cristiani:     It's a trust thing

Cristiani:     I'm kind of falling for him

Individual 1:  Aww. Pls <3

Individual 1:  This sunday u can show me while ur load is in me :p

Cristiani:     I dunno babe, he wants 10 dollars everytime I show our content to
others

| | | |
|---|---|---|
| 1 | Individual 1: | Lol if i give u $10 can i see |
| 2 | Cristiani: | Sure |
| 3 | Cristiani: | Do you have venmo? |
| 4 | Individual 1: | Whats ur venmo lol |
| 5 | Cristiani: | Cristiani |
| 6 | Cristiani: | Or check with my phone |
| 7 | Cristiani: | XXXXXX8099 |
| 8 | Cristiani: | Ur last name is [Individual 1]? |
| 9 | Cristiani: | [video of what appears to be Guardado orally copulating a post-pubescent male – file: **IMG_1518.MOV**] |
| 12 | Individual 1: | Yup |
| 13 | Cristiani: | That's hot |
| 14 | Cristiani: | [Individual 1] rhymes with cock |
| 15 | Individual 1: | Lol. :p anything of him getting fucked or fucking? |
| 16 | Cristiani: | He has those 😊 |
| 18 | Individual 1: | Lame :( i hoped u had more |
| 19 | Cristiani: | I can see if he's down to send some |
| 20 | Individual 1: | Sure. He must have sent u pics before right.  How did u meet? |
| 21 | Individual 1: | Or do u have vids of other boys? |
| 22 | Cristiani: | He and I met on Snapchat |
| 23 | Individual 1: | [A video of an individual, appearing to be Individual 1, anally sodomizing another age difficult individual who is on his/her knees and chest on a bed – file: **IMG_1027.MOV**] |
| 26 | Cristiani: | [A video of a male, later identified as Minor Victim 1,[2] approximately 14-17 years of age, lying on the bathroom floor.  A post-pubescent male is |

---

[2] The minor male's identity is known to law enforcement but will be referred to as Minor Victim 1 to maintain the anonymity

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

straddling the minor male and both penises are visible at some points in the video. The minor male manually masturbates the post-pubescent male who ejaculates on the minor male's chest. File: **IMG_0991.MOV**]

Cristiani:     This is some other 15 year old

Cristiani:     You have nice videos but I wish they had face

Individual 1:  I think u showed me that. Its hot af tho

Individual 1:  The boy in my vid is 15 too

Individual 1:  [Image of male wearing a plaid hoodie, blue shirt, and no pants.  His age is difficult to determine from the image.  The male has his legs spread apart exposing his genitalia. File: **IMG_1154.JPG**]

Individual 1:  [Video of what appears to be the same male in **IMG_1154.JPG** pulling his butt cheeks apart exposing his anus. File: **IMG_1116.MOV**]

Cristiani:     [Video file of what appears to be an adult male anally sodomizing another male while a third male is anally sodomizing the first male with his hand. File: **IMG_1453.MOV**]

Cristiani:     Where does he live

Cristiani:     I wanna join y'all

Individual 1:  Concord. He's hard to get a hold of. If i get him i'll have him btm for u if u come. He's so good in bed. Barely speaks English. I bet he started taking loads young

Cristiani:     That's very hot

Cristiani:     Can you host if I come Sunday?

Individual 1:  Yeah

Cristiani:     Do you live Aline's

Cristiani:     Alone

Individual 1:  Will u come and record me taking ur load? I have a roommate and upstairs neighbors. Just cant be suuper loud. Why? :p

Cristiani:     Can we invite a friend or somethin (sic)

of the minor.

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

Cristiani:        I want us to threeway

Individual 1:  After i play 1:1… rather start there

Cristiani:        I'm trying to see your big cock fuck someone's brain out

Cristiani:        Where's your sense of adventure

Cristiani:        But yeah I feel it

Law enforcement identified "Cristiani" as the defendant Christian Guardado.

On June 3, 2020, HSI executed a federal search warrant at the residence of Christian Guardado located in San Mateo, California for crimes related to the sexual exploitation of children.  On the same day, law enforcement conducted a *Mirandized* interview of Guardado.  HSI agents showed Guardado an image taken from **IMG_0991.MOV**, the pornographic video that Guardado shared with Individual 1 on or about February 21, 2019.  In response to seeing the image, Guardado responded, "Mmmm, ya, umm, really nice guy.  Lives close by, he used to live close by and...."  Guardado provided a nickname for Minor Victim 1.  Guardado said that Minor Victim 1 was "like 18" or that this is what Minor Victim 1 told him.  He further stated he had sex with Minor Victim 1 approximately four (4) years ago and that he communicated with Minor Victim 1 on Grindr and probably Snapchat.  When agents told Guardado that the image was taken from a screenshot of a video and then asked him if he recalled the video, Guardado responded affirmatively.  When asked about the background of the image, Guardado admitted "Ya, that's upstairs in my bathroom."

When asked if he was the other person in the video, Guardado initially said, "No comment." Guardado later admitted that he was the other individual in the video.  Guardado claimed to not know where "these people" lived and stated he would just "go and pick them up and have a good time." When asked how often he and Minor Victim 1 "hooked up," Guardado claimed he hooked up with Minor Victim 1 two (2) or three (3) times. When asked if "hooking up" meant having sex, Guardado replied that "hooking up" could mean "cuddling" or "oral" (oral copulation).

Agents then showed Guardado the text conversation between Individual 1 and Cristiani/Christian Guardado at cell phone number XXX-XXX-8099 between January 17, 2019 and February 21, 2019 that

they found on Individual 1's cell phone.  Guardado acknowledged that the phone number ending in 8099 is his cell phone number.  Agents again questioned him about **IMG_0991.MOV** and confronted him about the text message he sent to Individual 1 that said, "This is some other 15 year old."  When asked if Guardado knew Minor Victim 1 was 15, Guardado replied, "Um, he isn't."  When asked how old Minor Victim 1 was *then*, Guardado claimed he thought Minor Victim 1 was 18 or 19 years old *now*.  Agents then told Guardado that if Minor Victim 1 was 18 or 19 years old now, then four (4) years ago Minor Victim 1 would have been 14 or 15 years old.  Guardado replied, "Ya, uh huh, well he would have been maybe 17 or 16, I don't know if that makes it any better."  When confronted that the math did not add up, Guardado stated, "Um, well this is last year."  Guardado was reminded that he stated he met Minor Victim 1 four (4) years prior.  Guardado replied, "Um dude these are guys, I meet guys a lot.  I don't know, I don't have to keep track of the guys.  I probably, I have so much sex."  Later in the interview, Guardado said that he believed his interactions with Minor Victim 1 were within the last one (1) or two (2) years.

On December 18, 2020, HSI conducted a forensic interview with Minor Victim 1, during which Minor Victim 1 disclosed that he and Guardado[3] engaged in sexual activity in approximately the fall of 2018.  Based on his date of birth, Minor Victim 1 is presently 17 years old (still a minor), and he was 15 years old in the fall of 2018.  Agents showed Minor Victim 1 a sanitized image taken from video **IMG_0991.MOV**, and Minor Victim 1 confirmed that he is the individual shown in the image.  Minor Victim 1 also disclosed that he informed Guardado that he was a minor after they had sex the first time.  Minor Victim 1 claimed he told Guardado he was 17 years old (although he was actually 15 years old at the time) and that the fact that Minor Victim 1 was a minor did not dissuade Guardado from sexual conduct with Minor Victim 1 on future occasions over a three (3) to four (4) month period.

### B. Guardado Produced Additional Pornographic Videos of the 15-Year-Old Victim and Distributed Them Online

HSI searched Guardado's cell phone and Snapchat account pursuant to federal warrants and found numerous sexually explicit videos of Minor Victim 1.  In addition to video file **IMG_0991.MOV**,

---

[3] During the interview, Minor Victim 1 referred to Guardado as "Cristiani."

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1  Guardado produced no fewer than five (5) additional videos that show Minor Victim 1 engaged in

2  various sexually explicit conduct, including oral copulation, anal sodomy, and display of genitalia, with

3  Guardado or another individual.

4       Minor Victim 1 told law enforcement that he knew that Guardado had filmed some of the videos

5  but was surprised that some others were recorded.  Minor Victim 1 stated he did not know all the

6  footage was taken nor did he want the footage to exist.

7       Guardado's sexual abuse of Minor Victim 1 did not stop in fall 2018 or even on February 21,

8  2019, when Guardado texted **IMG_0991.MOV** to Individual 1.  Guardado continued to re-victimize

9  Minor Victim 1 again and again by distributing other sexually explicit videos of Minor Victim 1 to no

10  fewer than seven (7) different people online via Snapchat between June 25, 2019 and June 2, 2020.

11      **C.**    **Guardado Filmed A Sexually Explicit Video With Another Suspected Minor Victim and Distributed It For Payment**

12       HSI has potentially identified numerous additional suspected minor victims, although their

13  names and ages remain unconfirmed.  In addition to Minor Victim 1, at least one other victim –

14  Suspected Minor Victim 2 – involved hands-on abuse by Guardado.

15       During the June 3, 2020 interview, HSI agents questioned Guardado about his sexual abuse of

16  other minor victims.  They showed him an image, **IMG_1535.JPEG,** which Guardado sent to Individual

17  1 via text message on February 21, 2019.  Guardado identified the person in the image as Suspected

18  Minor Victim 2 by his first name and disclosed that he had sexual relations with Suspected Minor

19  Victim 2 at the end of 2018 or beginning of 2019.  When asked if he ever learned that Suspected Minor

20  Victim 2 was a minor, Guardado responded, "Afterwards, that's when the relationship ended and we

21  stopped communicating with each other."  Guardado claimed that he had sex one time with Suspected

22  Minor Victim 2.  Later in the interview, when asked how he found out that Suspected Victim 2 was

23  underage, Guardado answered, "I think [Suspected Minor Victim 2] mentioned it.  I think he said we

24  couldn't see each other because, ya, his parents were going to find out then that was a big red flag."

25  When asked how old Suspected Minor Victim 2 was, Guardado stated, "Um, not 18," but he did provide

26  an age.  He also said that he did not recall if he ever asked Suspected Minor Victim 2 his age.

27

28

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

At this time, the true identity of Suspected Minor Victim 2 is not known to law enforcement and law enforcement cannot confirm if he was a minor in February 2019.  However, when HSI interviewed Minor Victim 1, they showed him an image of Suspected Minor Victim 2 that Guardado sent to Individual 1.  Minor Victim 1 identified Suspected Minor Victim 2 by first name and stated Minor Victim 2 was also a minor, approximately one (1) year older than Minor Victim 1, who also engaged in sexual activities with Guardado.  Minor Victim 1 stated that Guardado attempted to set up a threesome with Guardado, Minor Victim 1 and Suspected Minor Victim 2.  Minor Victim 1 stated that a threesome did not ultimately happen and that he never met Suspected Minor Victim 2.  Minor Victim 1 also disclosed that Suspected Minor Victim had contacted him and asked him to tell Guardado to delete the videos that Guardado had of Suspected Minor Victim 2.

HSI also asked Guardado if he had sexually explicit photos or videos of Guardado and Suspected Minor Victim 2.  Guardado replied that "[Suspected Minor Victim 2] told me to delete them all."  At first, Guardado said that he only had videos of them "cuddling" and claimed that he did not have any sexually explicit images.  But after Guardado asked and learned from HSI that law enforcement had such videos, Guardado quickly admitted, "Now I'm recalling that I sent a blowjob video."  Guardado said later in the interview that he and Minor Victim 2 "stopped hanging out" because "he told me that I was being a little too rough with him."  When asked if Guardado was too rough sexually, he confirmed this was correct.

Agents then confronted Guardado about his text conversation with Individual 1 in which they discussed payment for sending sexually explicit images of Suspected Minor Victim 2.  On or about February 21, 2019, Guardado texted Individual 1, "[Suspected Minor Victim 2] wants cash if I send his xxx pics," and added, "He's a smart lil 15 year old."  Guardado then texted, "…he wants 10 dollars everytime I show our content to others."  In response, Individual 1 asked, "Lol if i give you $10 can i see [?]"  Guardado and Individual 1 then discuss payment using Venmo, and after providing his Venmo payment details, Guardado sent Individual 1 a video of Guardado orally copulating a post-pubescent male ("**IMG_1518.MOV**").  When asked about these text messages, Guardado stated, "[a]nd then I guess I get Venmo."  Guardado claimed he did not recall receiving money for the video but added,

"Clearly I did if I sent him the video."  Based on its review of Venmo records, law enforcement has confirmed that in February 2019, Individual 1 sent Guardado a Venmo payment of $10 along with a video camera emoji in the notes section.

HSI asked Guardado if he thought videos of Minor Victim 1 and Suspected Minor Victim 2 were all over the Internet.  Guardado responded that he hoped not and thought that maybe it was this one instance.  When asked if he shared the video files with other people, Guardado said he did not recall but admitted that he took a lot of videos so he did not know which ones he had sent to others.

### D.   Guardado Targeted Suspected Minor Victims Online and Enticed Them to Meet in Person to Film Videos of Them Having Sex

Law enforcement's review of Guardado's Snapchat account on his cell phone revealed multiple conversations with potential additional victims, whose messages strongly indicate that they are minors. For instance, in April 2020, Guardado engaged in the following sexually explicit conversation online with Snapchat User 1, who is suspected to be a 15-year-old male.

On April 19, 2020, Guardado stated, "I need sex lol" and Snapchat User 1 replied, in part, "[b]ahaha me too" followed by "I think i could help you out."  Guardado then asked if Snapchat User 1 could drive yet, to which Snapchat User 1 responded in the negative.  Guardado asked if Snapchat User 1 had his own place and asked where he lived.  Snapchat User 1 replied that he was only 15 and provided his address.  Guardado claimed he forgot and Snapchat User 1 asked Guardado, "Soo you're not down anymore?"  Guradado replied that he had his own place and preferred to host.  Snapchat User 1 stated that he "cant go all the way out there lmao" and asked, "Is there any way I can convince you daddy[?]"  At this point, Guardado said, "Send me some pics," and "Take those off babe."  Snapchat User 1 sent an image of exposed buttocks and asked Guardado to send something too. Guardado sent back an image of a post-pubescent male's erect penis next to a water bottle followed by another image of a post-pubescent male masturbating and ejaculating in the front driver's seat of a Honda vehicle. Guardado then asked to see Snapchat User 1's "cock" and videos.  Guardado stated that he had a friend that would let Guardado and Snapchat User 1 "hang at his house in San Jose."  Snapchat User 1 asked if Guardado's friend would be okay with Snapchat User 1's age.  Snapchat User 1 requested and Guardado

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1    sent more images/videos, including at least one sexually explicit image.  When Snapchat User 1 asked if

2    his age was bad or if Guardado was upset over his age, Guardado replied, "I'm not mad" and added,

3    "It's whatever."  Snapchat User 1 also stated he was a sophomore in high school.

4            On April 20, 2020, Guardado asked Snapchat User 1 if Snapchat User 1 could sleep over.

5    Snapchat User 1 responded that he thought so.  Guardado stated that he and Snapchat User 1 should

6    make a video.  Guardado also said, "I like to be called papi and I want my dick as long as possible in

7    your mouth when we hang out haha."   Snapchat User 1 also mentioned that he has shown Guardado his

8    penis before.

9            On April 27, 2020, Snapchat User 1 asked Guardado "You're coming on Wednesday[?]" and

10   Guardado responded in the affirmative.  When Snapchat User 1 asked what they were going to do,

11   Guardado responded, "[t]ake turns on ur ass."

12   **III.    ARGUMENT**

13           **A.       Legal Standard for Pretrial Detention**

14           The Bail Reform Act permits pretrial detention of a defendant without bail where "no condition

15   or combination of conditions will reasonably assure the appearance of the person as required and the

16   safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where

17   a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United*

18   *States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the

19   community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  A finding

20   that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Motamedi*,

21   767 F.2d at 1406.

22           "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors

23   articulated in § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  The

24   Court must consider four factors in determining whether the pretrial detention standard is met:  (1) the

25   nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

26   (3) the history and characteristics of the defendant, including the defendant's character, physical and

27   mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse,

28

11

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1   criminal history, and record concerning appearance at court proceedings, as well as whether the crime

2   was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the

3   danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C.

4   § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).  Categorical grants or denials of

5   bail, not tethered to an individualized determination, are impermissible.  *Id.*  Consideration of factors

6   outside the articulated factors set forth in Section 3142 is also disfavored.  *Id.*

7        Because this is "an offense involving a minor victim" under 18 U.S.C. § 2252(a)(2), "it shall be

8   presumed that no condition or combination of conditions will reasonably assure the appearance of the

9   person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E).  Once this presumption

10  is triggered, "the defendant [must] produce some credible evidence forming a basis for his contention

11  that they will appear and not be a threat to the community."  *United States v. Thomas*, 667 F. Supp. 727,

12  728 (D. Or. 1987); *see also United States v. Castaneda*, No. 18-CR-00047-BLF-1, 2018 WL 888744, at

13  *4 (N.D. Cal. Feb. 14, 2018).  And even where a defendant offers evidence to rebut the presumption,

14  courts consider the four Section 3142(g) factors to determine whether the pretrial detention standard is

15  met.  *See* 18 U.S.C. § 3142(g); *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  Moreover,

16  "[t]he presumption [of detention] is not erased when a defendant proffers evidence to rebut it; rather the

17  presumption remains in the case as an evidentiary finding militating against release, to be weighed along

18  with other evidence relevant to factors listed in § 3142(g)."  *Id.*

19        **B.    The Section 3142(g) Factors Weigh in Favor of Detention**

20        Here, there already exists a rebuttable presumption *for* detention – a presumption that, for the

21  reasons discussed below, the defendant cannot overcome.  Moreover, even if the defendant were able to

22  rebut the presumption, the Section 3142(g) factors mandate detention.

23        **1.    Nature and Circumstances of the Offense**

24        In the fall of 2018, Guardado engaged in continued sexual activity with Minor Victim 1, who

25  was then a 15 year old boy, even after Minor Victim 1 told the defendant that he was underage.  During

26  a three to four month period, Guardado filmed Minor Victim 1 performing various sex acts, including

27  manual masturbation, oral copulation, and anal sodomy, either with Guardado or another individual.

28

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1   Most of the videos appear to have been filmed by Guardado himself in the upstairs bathroom or the

2   garage of his family home.

3          But Guardado's sexual exploitation and abuse of this child did not stop there.  Between February

4   21, 2019 and June 2, 2020, the defendant distributed these sexually explicit videos of Minor Victim 1 to

5   multiple people.  On or about February 21, 2019, Guardado sent Individual 1 video file

6   **IMG_0991.MOV**, which depicts Minor Victim 1 manually masturbating Guardado, and followed with

7   the text message, "This is some other 15 year old."  Guardado then sent other pornographic videos of

8   Minor Victim 1 to another seven (7) people via Snapchat, which also depict Minor Victim 1 engaged in

9   sex acts with Guardado or another individual.  Child pornography crimes represent the *continuing*

10  *victimization* of the children depicted in these images.  Each time Guardado distributed a video – to

11  another child predator, to a stranger, or to a suspected minor victim that he enticed online – he re-

12  victimized Minor Victim 1 anew.

13         Distribution of child pornography is growing worse.  The National Center For Missing and

14  Exploited Children ("NCMEC") received 70 million images and videos of child pornography last year.[4]

15  This was a dramatic increase in the total number of images, fueled by the surging number of child

16  pornography videos, approximately 41 million, a record number.  *Id.*  Five years ago, NCMEC received

17  less than 1 percent of that number of videos.  *Id.*  The advent of social media apps has allowed users to

18  share child pornography videos repeatedly.  *Id.*

19         The long-term harms suffered by victims cannot be overstated.  Suicide, lifelong symptoms of

20  post-traumatic stress disorder, and chronic difficulties with trust and intimacy are some of its

21  documented consequences.[5]  Congress has recognized that, "where children are used in its production,

22  child pornography permanently records the victim's abuse, and its continued existence causes the child

23  victims of sexual abuse continuing harm by haunting those children in future years."  Child Pornography

24  Prevention Act of 1996, Pub. L. No. 104-208 § 121, 110 Stat. at 3009, 3009-27 (1996).  Additionally,

25

26  ───────────────────────
    [4] *Tech Companies Detect a Surge in Online Videos of Child Sexual Abuse;* N.Y. Times, February 7, 2020, available at
    https://www.nytimes.com/2020/02/07/us/online-child-sexual-abuse.html (last accessed January 10, 2021).

27  [5] *See* https://www.scientificamerican.com/article/the-coronavirus-pandemic-puts-children-at-risk-of-online-sexual-
28  exploitation/ (last accessed January 10, 2021).

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1   the Supreme Court has said that child pornography "produces concrete and devastating harms for real,

2   identifiable victims." *Paroline v. United States*, 572 U.S. 434, 457 (2014).  Courts considering the

3   matter have thus found that even possession of child pornography — let alone distribution and

4   production — weighs in favor of detention.  *See United States v. Bell*, No. SACR 08-00087-MMM,

5   2008 WL 11411709, at *2 (C.D. Cal. June 6, 2008) (collecting cases).

6       Although Guardado has been charged only with distribution of child pornography, his related

7   conduct of producing child pornography (in potential violation of 18 U.S.C. § 2251(a)) and enticing

8   children to engage in unlawful sexual activity (in potential violation of 18 U.S.C. § 2422(b)) are

9   important to consider when evaluating the seriousness of the danger he poses.

10              **2.       Weight of the Evidence**

11      The weight of the evidence also favors detention because there is strong evidence of the

12  defendant's guilt.  The evidence against the defendant includes (1) Guardado's transmittal of video file

13  **IMG_0991.MOV** to Individual 1 via text message; (2) Guardado's text message to Individual 1 stating,

14  "This is some other 15 year old"; (3) Guardado's admissions to law enforcement that he is one of the

15  two individuals shown in the video, the video was filmed in his bathroom, and that he engaged in sexual

16  activity with the minor victim shown in the video; (4) Minor Victim 1's statements to law enforcement

17  that he is the other person shown in the video, he and Guardado engaged in sexual activity in the fall of

18  2018, and that they continued their sexual conduct even after he told Guardado that he was underage;

19  and (4) the fact that Minor Victim 1 was 15 years old at the time the video was produced and was still a

20  minor when Guardado distributed the video to Individual 1 in February 2019.

21      While the weight of the evidence is deemed the least important by case law, courts are still

22  "require[d]" to consider it, and it can help establish dangerousness.  *Hir*, 517 F.3d at 1090 (finding that

23  "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant

24  would pose a danger if released).  Likewise, overwhelming evidence of the defendant's guilt "makes it

25  more likely that he will flee," particularly in light of the lengthy term of imprisonment based on a

26  Guidelines range of 135 to 168 months that Guardado potentially faces here.  *United States v. Gebro*,

27  948 F.2d 1118, 1122 (9th Cir. 1991).

28

14

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

### 3.   History and Characteristics of the Defendant

The defendant's criminal history and characteristics demonstrate that he is a determined child predator who victimizes underage children through hands-on sexual abuse and online exploitation. Guardado's lack of prior convictions should not be confused with an absence of long-standing, seasoned criminal activity. Guardado began producing sexually explicit videos of Minor Victim 1 as early as fall 2018 – over two years ago. His distribution of child pornography started no later than February 2019 and he even sent a pornographic video of Minor Victim 1 on June 2, 2020, the very day before HSI executed a federal search warrant at his residence.

There are likely many more children who have suffered sexual abuse at the hands of this child predator. Guardado's sexual exploitation of Suspected Minor Victim 2 strongly resembles that of Minor Victim 1. Guardado admitted to law enforcement that he engaged in sexual activity with Suspected Minor Victim 2 in late 2018 or early 2019, and he also admitted to sending a "blowjob" video of Suspected Minor Victim 2. This is consistent with other evidence found on Individual 1's cell phone that shows that on or about February 21, 2019, Guardado agreed to send a sexually explicit video of Suspected Minor Victim 2 to Individual 1 in exchange for $10 payment. After providing his Venmo payment details to Individual 1, Guardado sent him video file **IMG_1518.MOV**, which shows Guardado orally copulating a post-pubescent male.

The Covid-19 pandemic appears to have spurred an increase in Guardado's online exploitation of minors. The first statewide shelter-in-place mandate in response to Covid-19 coincided with Guardado's heightened activity on Snapchat. Between April 22, 2020 and June 2, 2020, Guardado sent sexually explicit videos of Minor Victim 1 to six (6) different Snapchat users. He also continued to entice suspected minors on Snapchat, including Snapchat User 1, engaging them in sexually explicit conversation, persuading them to send him images and videos, and/or pressuring them to meet up for sex.

In assessing the defendant's characteristics and his danger to the community, this Court should also consider the life choices that Guardado has made that have placed him in direct contact with children and potential minor victims. During his interview with HSI, Guardado stated that he previously

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

worked with children as a camp counselor with the Redacted. HSI agents questioned Guardado about his activities as a camp counselor and asked him if he ever did anything inappropriate with any of the camp attendees. Guardado claimed he had not. Agents then asked Guardado if he had ever told anyone that he was inappropriate with camp attendees, to which he replied, "Ohhh, maybe." When asked who he told, Guardado stated, "Um, that I like, um, I don't know, but it was a lie. Total lie." Guardado admitted, when asked, that he stated he received a "blow job" from a camp attendee, although he claimed that this statement was untrue. This is consistent with Individual 1's statement to law enforcement that Guardado had been a camp counselor and that Guardado had mentioned to him that one of the camp attendees had given Guardado a blow job. Guardado also expressed that he loved working with children and that he wants to be a sex therapist during his interview with law enforcement.

Guardado is currently a student at San Francisco State University and returned to California in March 2020, following a nine-month period of living and studying in Madrid, Spain. When asked about this, Guardado told law enforcement that he had been living in Spain for the past nine months. He further stated, "Spain has a younger age of consent which is why I picked it." Guardado also said later in the interview, when asked why he decided not to have sexual relationships with minors, "I mean that's why I went to Spain just to get, get that out of my system, and then just be back here and, I mean I want to study sex and I want to help other people and it sounds like I need to be helping myself." When asked to explain what it meant to get it out of his system, Guardado responded, "Ya, I don't know, I mean, I have just always had demons inside, um, and I just want to express them out you know."

**4.    The Defendant is a Danger to the Community**

As described above, there is strong evidence that the defendant poses a serious danger to the community, especially his minor victims. This danger extends not only to children who are lured to Guardado's home and suffer hands-on abuse, but also to the minor victims whose sexually explicit images and videos Guardado distributes to others and to the children online who are susceptible to Guardado's enticement and manipulation. Danger is no less real simply because it presents itself online. The potential further commission of similar offenses against minor victims presents a grave risk to potential victims and the community at large.

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1    Furthermore, nothing about the COVID-19 pandemic mitigates the danger that Guardado poses

2    if released.  To the contrary, limitations wrought by the pandemic make it *more* likely that he will

3    successfully exploit his home- and technology-bound minor victims.  Guardado's communications with

4    suspected minor victims online reflect a mastery over techniques that are known to be used by sexual

5    predators of children, such as asserting himself as an authority figure, using romantic or intimate

6    language, engaging in sexually explicit conversations, and indicating a desire to meet in person.

7    No combination of release conditions can reasonably assure the safety of the community.  First,

8    the defendant should not be released to his current residence or placed under the supervision of any

9    family members.  Prior to his arrest, Guardado lived with his mother, grandmother, sister, and brother.

10   He shared a bedroom with his mother.  He also claimed the garage as his own space, although he did not

11   sleep there.  Furthermore, Guardado used the garage as his own "sex den" in which he engaged in sex

12   acts with minors and produced porngraphic videos.  These close living conditions with family members

13   did not stop Guardado from sexually abusing minor victims at the residence, distributing child

14   pornography, or enticing suspected minors online.

15   Releasing the defendant to his residence into the custody of his family would thus put him back

16   in the exact same location and conditions in which perpetrated the instant offense.  Guardado's mother is

17   employed and is not home during the day to monitor Guardado.  His younger siblings likely have their

18   own pursuits and obligations.  Even if a family member could stay home with Guardado at all times –

19   which is itself unrealistic – it is highly unlikely that he or she could adequately ensure Guardado's

20   compliance.  There can be no doubt that Guardado is capable of concealing his conduct and covering his

21   tracks.  He even filmed videos of Minor Victim 1 engaged in sex acts with the defendant in the upstairs

22   bathroom of the residence – which he shares with all family members – *while his grandmother was at*

23   *home*.  Given that neither his mother, grandmother, nor siblings were able to detect, let alone deter,

24   Guardado from committing sex offenses against children under their roof over the last two years, it is

25   highly doubtful that they would have the requisite moral suasion to prevent him from committing further

26   crimes under supervised release.

27   Second, limits on Guardado's movements outside of his home, or even placing him under

28

17

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

1   complete house arrest, are unlikely to mitigate the danger in this case, which manifests not on streets but

2   online.  Such restrictions would not prevent Guardado from staying home and sexually enticing children

3   over the Internet.  Guardado's crime is committed in the shadows, from the safety of his home.  His

4   chats indicate that he converses with his victims at all hours, including when minors are in school and,

5   due to the pandemic, most likely to be online.  In other words, conditions around when he may leave the

6   house do not mitigate the danger Guardado poses.

7        As of June 3, 2020, when law enforcement interviewed Guardado as his home, Guardado was a

8   student at San Francisco State University.  If Guardado is permitted to leave his residence to attend

9   class, no-one will be able to monitor his conduct for many hours at a time, and public safety will thus

10  depend on the defendant's good faith compliance with supervised release conditions.  Guardado owns

11  and drives a car.  He has also admitted to having sex in his car.  He could drive where he wants while

12  going and coming from classes in San Francisco.  He could drive to a store and purchase a new phone or

13  computer without informing his custodian, borrow a phone, or visit any number of readily available

14  Internet terminals in San Francisco, and be right back at the same place engaged in the same activity

15  with all of the attendant harms to children and society.  His family members would not be able to

16  monitor this activity.  Pretrial Services can only monitor a disclosed phone or disclosed internet access.

17       Third, any restrictions on Guardado's access to electronic devices – or even a complete ban – are

18  also problematic.  The defendant may argue that his college studies require attendance of online classes

19  or, at the very least, an Internet connection.  Yet permitting Guardado to have an electronic device and

20  an Internet connection gives him the very weapons that he successfully deployed to cause lasting

21  damage to his prior victims.  Just as a court would want to ensure that an alleged serial shooter on

22  pretrial release does not have access to a firearm, only a condition that removes any and all *access* to

23  electronic devices can ensure that Guardado is unable to sexually entice children.  That condition seems,

24  at best, aspirational.  Even if he is not allowed devices of his own, Guaradado would have access to

25  devices belonging to his family members.

26       The *Marigny* court, addressing concerns similar to those presented here, held that "[w]hile

27  phones and computers may be placed out of reach to limit Defendant's Internet access, they are

28

18

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

overwhelmingly available in the community such that Defendant could gain access to the Internet with virtually no supervision and pretrial services would not be sufficiently alerted of Defendant's breach of his conditions." *United States v. Marigny*, No. 20-MJ-70755-MAG-1, 2020 WL 4260622, at *5 (N.D. Cal. July 24, 2020).  This Court should also order Guardado detained.

### 5. The Defendant is a Flight Risk

No conditions of supervised release would assure the defendant's appearance for court hearings. First, Guardado poses an imminent flight risk based on his plans to travel to Thailand for a study-abroad program later this month.  There is evidence to suggest that Guardado has been accepted to a study-abroad program at Mahidol University International College in Thailand, and that he intends to move sometime in January 2021.  There is also an obvious risk that Guardado will continue to have sex with underage boys in a country that is widely perceived as a hotspot for the sexual exploitation of children and sex tourism.  Based on the defendant's prior statements that he chose to study in Spain, at least in part, because of its lower age of consent, his plans to travel to Thailand render him a serious flight risk and potential danger to children.

Second, Guardado's history of travel and study abroad demonstrates that he has the experience, financial resources, and willingness to move to another country.  Guardado's credit card transaction history shows that he traveled to Spain, the United Kingdom, Bulgaria, Portugal, Tunisia, Romania, and Italy between August 2019 and March 2020.  Most recently, Guardado returned to the United States from Puerto Vallarta, Mexico on or about November 18, 2020.

Third, the defendant has a strong incentive to flee because, if convicted for distribution of child pornography under 18 U.S.C. § 2252(a)(2), he faces a mandatory minimum sentence of five years' imprisonment and a Guidelines sentence of 135 to 168 months.

### C. The Risk that Guardado May Contract COVID-19 at Santa Rita Jail Does Not Warrant Pretrial Release.

While the current pandemic presents an unprecedented and tragic situation that is afflicting everyone, COVID-19 does not change the Bail Reform Act's mandate of an "individualized evaluation guided by the factors articulated in § 3142(g)" for determining whether a defendant should be granted bail. *Diaz-Hernandez*, 943 F.3d at 1199.  Nor does it alter the pretrial detention standard whereby the

19

1   Court must detain the defendant if it finds that the defendant is either a danger to the community or a

2   flight risk.

3       As other judges of this Court have found, the COVID-19 pandemic does not meaningfully shift

4   the balance of the § 3142(g) factors in defendant's favor.  *See, e.g.*, *United States v. Trujillo*, No. 20-cr-

5   00028-EJD-1 (SVK), Dkt. 15 (N.D. Cal. March 19, 2020) (rejecting a motion for release premised on

6   the emergence of COVID-19 because the existence and spread of COVID-19 did nothing to undermine

7   the Court's previous findings regarding risk of flight and danger to the community); *see also United*

8   *Sates v. Cazares*, No. 18-cr-00466-BLF-1, Dkt. 351 (N.D. Cal. Apr. 23, 2020) (concluding, in the pre-

9   trial detention context, that "the balancing of the factors does not warrant [defendant's] release [because

10  he] continues to pose a serious risk to the safety of the community, and that risk overrides [defendant's]

11  concerns that he might contract COVID-19 at [local jail]."); *United States v. Phillips*, No. 20-cr-00099-

12  JST-1, Dkt. 29 (N.D. Cal. Apr. 13, 2020) (rejecting motion for release under § 3142(i) and inability to

13  prepare defense due to COVID-19 because the existence and spread of COVID-19 did nothing to

14  undermine the Court's previous findings that defendant presents a danger to the community).

15      Consideration of the Section 3142(g) – which are unaffected by COVID-19 – compels this Court

16  to conclude that Guardado remains a danger to the community and a flight risk and must therefore be

17  detained pending trial.  Nothing about the COVID-19 pandemic reduces the danger that the defendant

18  will commit other child exploitation crimes or other offenses that violate the conditions of his supervised

19  release.

20      Moreover, at this time, the Government is not aware of any facts (i.e., age or medical conditions)

21  that would put the defendant at greater risk of developing serious illness due to COVID-19 were he to

22  contract it.  The defendant is a healthy 24-year-old man with no known physical or mental health issues.

23  \\

24  \\

25  \\

26  \\

27  \\

28

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD

**IV.      CONCLUSION**

Because there are no conditions of supervised release that can reasonably assure the safety of the community or adequately mitigate his flight risk, Christian Guardado should be detained pending trial.

DATED:  January 10, 2021                                   Respectfully submitted,

                                                                           DAVID L. ANDERSON
                                                                           United States Attorney


                                                                           _____/s/_____
                                                                           YOOSUN KOH
                                                                           Assistant United States Attorney

UNITED STATES' DETENTION MEMORANDUM
21 CR 0010 JD